## THE DOLPHIN.

### No. 265.

District Court, E. D. Louisiana.

Aug. 14, 1940.

Montgomery & Montgomery (by Brainerd S. Montgomery), of New Orleans, La., for libelant.

Baldwin J. Allen, of New Orleans, La., for respondent.

BORAH, District Judge.

C. D. Cahoon, former chief mate on the steamship Dolphin, filed this libel in rem on November 18, 1936, to recover certain wages which he claims to have earned during the period from January 18, 1935, to July 16, 1936. It is admitted that the Dolphin was at all times mentioned under charter to the Florida Steamship Co., Inc., that libelant was employed on December 18, 1934, by the Mobile agent of said company, that the contract of employment was oral and the terms were that libelant was to receive $75 for the first month, $100 for the second month and $125 per month thereafter.

The claim of libelant is made up of the following items: From January 18, 1935, to February 18, 1935, the second month of his employment, libelant is claiming the amount of $25, which sum represents the difference between the amount of $75 which he received and the amount of $100 to which he was entitled under the contract. From February 18, 1935, to December 18, 1935, libelant is claiming $500, which sum represents the difference between the amount of $75 per month which he received and the amount of $125 per month which he was supposed to get under the contract. Libelant did not work because of illness and claims no wages for the period from December 18, 1935, to February 18, 1936. From February 18, 1936, to June 18, 1936, $140 is claimed, which sum represents the difference between the $90 per month he received and the amount of $125 per month to which he was entitled. From June 20, 1936, to July 16, 1936, a period of twenty-seven days during which the vessel was under seizure and the crew was being held, claim is made for $81, which sum represents wages at the rate of $90 per month.

The principal questions that arise for decision are (1) did the libelant waive his rights to back wages or agree to a change in the original contract and (2) was the receipt which he signed on October 8, 1936 a bar to this action?

The record consists of the testimony of libelant and of McLeod, former manager of the Florida Steamship Co., Inc., a witness for claimant, together with certain pay rolls of the Dolphin covering with minor exceptions the period from January 16, 1935, to May 31, 1936.

Libelant's testimony may be summarized as follows: He contends that he was employed as mate and pilot, that his claim as set forth in the libel is just, that he did not agree with any officer or agent of the company to waive any part of his back wages but on the contrary complained repeatedly to Martin, the Company's agent, about the wages they owed him.

The pay rolls which are in evidence show that from the time of libelant's employment on December 18, 1934, up to December 1, 1935, when his wages were increased to $90 a month, his wages were certified on the pay rolls as being $75 per month and that he was paid for each day that he worked at that rate. Libelant claims that he received $75 per month up to December 15, 1935. He admits that he signed all pay rolls but says that he did not read what he signed.

When the Dolphin was libeled in Mobile on June 20, 1936, libelant says that he and other members of the crew filed an intervening libel claiming back wages and that his claim was for $665. That the crew were asked to dismiss their libel so the vessel could go back to work and they did so, but he says that he did not relinquish his claim for back wages. When the vessel was released he received through his attorneys $20 or $21, which he says was the balance due him on the basis of $90 per month. In testifying with reference to the related $81 item, libelant claims that this sum was due him under what he termed a practically new contract.

Libelant further stated that he was discharged on July 16, 1936, and that on August 1, 1936, he went back to work under what he considered a new contract because he did not have the responsibility of being pilot, and they paid him wages at the rate of $90 per month as they had promised.

That on October 7, 1936, he signed a receipt reading "Received from Florida SS Co. Inc. on account for wages ten dollars", and on October 8, 1936, in McLeod's office at New Orleans he signed without reading a further receipt worded as follows: "Received in full and final settlement of all wages due to me as chief officer of S/S 'Dolphin' the sum of twenty-three & 00/100 ($23.00) dollars." These receipts, according to libelant, had no relation to the original contract but were payments on what he considers the third contract.

McLeod, claimant's sole witness, testified as follows: He stated that the Florida Steamship Co. Inc., was formed in November, 1934. That in December of that year the company had contracts with the Mobile buyers of citrus fruits; that an unprecedented freeze ruined half the orchards in the Tampa district and as there was practically no other return cargo from Tampa the company faced a serious situation and everyone on the Dolphin knew this. Additional money had to be raised and this was accomplished when the treasurer and president of the company came forward to meet the emergency. A new master was employed on or about the first week in January, 1935. Captain Tibbetts, the new master, invested $200 cash in the company, subscribed to additional stock to be paid out of his wages and agreed to work for $100 per month as all other members of the crew were working for less than normal wages. The witness says that Captain Tibbetts discussed conditions thoroughly with him and it was decided that everyone, including himself, should work for low wages until the company was able to pay more, that they did not reduce any wages but simply agreed that they would not pay higher wages as was first expected. That the master, according to law, was the one who employed the men and though he discussed with him all increases or reductions in wages the master made all adjustments and made out the pay rolls in duplicate.

From February 22, 1935, to about March 15, 1935, the Dolphin was laid up for repairs on orders from the underwriters to the owners. During the next three or four months and because of the situation in south Florida and her inability to secure south bound cargo, the vessel was operated and then laid up alternately every five days. During these lay up periods libelant usually went to his home in the country.

On November 22, 1935, the Dolphin went aground and sustained serious damage and she was taken to the port of Mobile for repairs. In January, 1936, libelant left the vessel without notice to him to go to the U. S. Marine Hospital and without notice or permission rejoined the vessel on March 2nd of the same year.

McLeod further testified that libelant signed each pay roll in the presence of the master and most of the time in his presence and he made no protest whatever about his wages at the times he was paid until the time he signed the receipt on October 8, 1936. That on several occasions libelant asked for an increase in wages and he was told that the company was not able to comply but when it could he would be paid more money.

Libelant was carried on the pay rolls as chief mate. McLeod says that he was employed in that capacity and as it is customary on coastwise vessels for the officers to have a pilot's license, naturally he worked in that capacity as did the other officers aboard the Dolphin. McLeod states that when libelant's wages were increased to $90 per month in December, 1935, a new master was in charge and the increase was given when he signed up for each trip.

On June 19, 1936, the Dolphin was libeled in Mobile by the company that did the repair work in November of the previous year. The crew thereupon filed an intervening libel and libelant then for the first time claimed that additional wages were due him. Subsequently libelant and four other officers on behalf of themselves and the crew signed an agreement as to the actual amounts due them in July, 1936, including the period when the vessel was under seizure, and they dismissed their libel when money sufficient to pay all wages in full up to June 15, 1936, was paid to their attorney on July 18, 1936. The company agreed to pay the balance in four monthly payments and some of that was paid and some was not.

■ From this analysis of the testimony it is apparent that the record in this case may not be characterized as satisfactory. However, considering the fact that the libelant has been following the sea for fifty-four years, that he holds a master's license and has owned and operated with difficulty vessels larger than the Dolphin, and considering the uncontroverted and competent

evidence in the light of the probabilities of the situation, I find that libelant agreed in January, 1935, to a change in the original contract and that he was paid all wages due him to June 18, 1936. I further find with reference to the $81 item which is subject to a credit of $5, that the vessel was under seizure during the period covered by this claim. The Court further finds as a fact that libelant well knew the nature of the receipt which he executed on October 8, 1936.

As a matter of law the Court concludes (1) that libelant's claim covering the period from December 18, 1934, to June 18, 1936, is without merit; (2) that the item of $81 claimed covers wages during a period when the Dolphin was under seizure and can not give rise to a right to proceed in rem against the vessel; (3) that the receipt of October 8, 1936, is a bar to this action.

A decree may accordingly be entered dismissing the libel with costs.